CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Erica Choi (Bar No. 302351)
(E-Mail: erica_choi@fd.org)
Shannon Coit (Bar No. 298694)
(E-Mail: Shannon_Coit@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
ASHLEIGH BROWN

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ASHLEIGH BROWN,<br><br>Defendant. | Case No. 2:25-CR-701-FMO<br><br>**MOTION TO COMPEL GRAND JURY TESTIMONY TRANSCRIPT(S)**<br><br>**Hearing Date: October 10, 2025** |

Defendant Ashleigh Brown, by and through her attorneys, Erica Choi and Shannon Coit, hereby files this motion to compel grand jury testimony transcript(s).

                                            Respectfully submitted,

                                            CUAUHTEMOC ORTEGA
                                            Federal Public Defender

DATED: September 26, 2025      By  */s/ Erica Choi*
                                            ERICA CHOI
                                            Deputy Federal Public Defender

## I.     INTRODUCTION

The government presented this case to a grand jury, and failed to obtain an indictment.[1] Witness testimony that resulted in a grand jury declining to indict in this case is relevant to Ms. Ashleigh Brown's defense under *Brady v. Maryland*, 373 U.S. 83 (1963) and *Gigilo v. United States*, 405 U.S. 150 (1972). This is particularly so if testimony to the grand jury will impeach trial witness testimony that differs, even slightly, in its recitation of the evidence. There is good reason to believe the grand jury transcripts contain evidence favorable to the defense. Ms. Brown requests the Court compel the government to disclose grand jury transcripts in this case.

## II.     BACKGROUND

On August 2, 2025, Ms. Brown was arrested during a protest against Immigration and Customs Enforcement ("ICE") in downtown Los Angeles. She was initially charged on a felony complaint for assaulting a federal officer, along with co-defendant Jonathan Redondo-Rosales. *See* Exhibit A, Criminal Complaint, 2:25-mj-4835-DUTY.

According to the complaint, FPS Officer Z.C and four other officers were in the process of arresting co-defendant Redondo-Rosales. As they were escorting Mr. Redondo-Rosales towards the Alameda Street entrance of the Roybal Federal Building, "BROWN approached Officer Z.C. and stepped into Officer Z.C.'s path. Officer Z.C. continued past BROWN toward the Alameda Street Entrance, but as he did so, BROWN intentionally hit Officer Z.C. in his left side with her right arm." Exh. A ¶ 4(e).

The complaint's affidavit was sworn by Special Agent Thomas J. Smith, who based his allegations on "video footage publicly available on Tiktok and apparently captured by civilian bystanders," "and [his] conversations with other federal officers

---

[1] Government counsel confirmed to defense counsel that a grand jury proceeding in this case occurred, and no bill was returned. However, the government has indicated it will not produce the grand jury transcript(s) because those witness(es) will not be called to testify at trial.

and agents." Exh. A ¶ 4. Notably, video evidence produced by the government does not show the facts alleged in the complaint: that Ms. Brown "approached Officer Z.C. and stepped into [his] path," and that she "intentionally hit Officer Z.C. in his left side with her right arm."

These allegations then, must have come from officers who will testify at trial. None of the witness statements received in discovery to date indicate that Ms. Brown "approached Officer Z.C. and stepped into Officer Z.C.'s path."[2] Likewise, the reports provide conflicting statements about where and how Ms. Brown supposedly hit Officer Z.C. And there is no physical evidence of an assault.

Given the contradictory statements, and the fact the grand jury did not return a bill, there is good reason to believe the grand jury transcripts contain evidence favorable to the defense.

### III.    ARGUMENT

Disclosure of grand jury materials under Rule 6(e) is generally permitted upon a defendant's showing of a "particularized need." *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221-22 (1979); *United States v. Sells Eng'g*, 463 U.S. 418, 442-443 (1983). This showing of "particularized need" requires that the party requesting disclosure show that the material sought is necessary to "avoid possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Id*. at 443.

**A. The grand jury transcripts include *Brady/Giglio* evidence.**

The prosecutor in a criminal case must disclose evidence favorable to the accused. The Supreme Court has stated that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is

---

[2] The government produced redacted reports of interviews of the alleged victim Z.C. and two other FPS officers. The defense has requested unredacted reports, as well as complete audio recordings of those interviews.

3

1 material either to guilt or to punishment, irrespective of the good faith or bad faith of
2 the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *Brady* also requires the
3 disclosure of evidence impeaching the testimony of a government witness when the
4 reliability of that witness may be determinative of a criminal defendant's guilt or
5 innocence. *See Giglio v. United States*, 405 U.S. 150 (1972). *See also* Bagley, 473 U.S.
6 667 (1985).

7 The mandates of *Brady* and *Giglio* override the requirements of the Jencks Act.
8 *See e.g., Chavis v. State of N.C.*, 637 F.2d 213, 223 (4th Cir. 1980) (*Brady* is broader
9 than Jencks and may be violated when government fails to disclose material that
10 otherwise is not discoverable under Jencks); *United States v. Campagnuolo*, 592 F.2d
11 852, 860 (5th Cir.1979) (stating without deciding that *Brady* would override Jencks Act
12 when failure to order pretrial discovery would result in denial of defendant's due
13 process rights); *United States v. Tarantino*, 846 F.2d 1384, 1414 n.11 (D.C. Cir. 1988)
14 (government's *Brady* obligations are in no way lessened by the Jencks Act limitations).

15 The government must make a "reasonable effort" to aid the defense in obtaining
16 favorable evidence and witnesses. *United States v. Henao*, 652 F.2d 591, 592 (5th Cir.
17 1981); *United States v. Hernandez Gonzalez*, 608 F.2d 1240, 1246 (9th Cir. 1979).
18 Furthermore, the government must disclose *Brady* material at a time that permits the
19 defense to use these materials for trial preparation. *See, e.g., United States v. Elmore*,
20 423 F.2d 775, 779 (4th Cir. 1970); *United States v. Davenport*, 753 F.2d 1460, 1462
21 (9th Cir. 1985).

22 Here, the fact that no charges were returned against Ms. Brown raises a valid
23 inference that the grand jury transcripts are unfavorable to the government and
24 favorable to the defense. Moreover, they may impeach trial witnesses if trial witness
25 testimony differs in any respect from the testimony provided to the grand jury.
26 ///

**B. There is little interest in protecting the secrecy of the grand jury proceedings.**

There is little interest in secrecy at this point in the proceedings. Ordinarily, courts weigh the need for disclosure against the traditional policies underlying grand jury secrecy:

(1) To prevent the escape of those whose indictment may be contemplated;

(2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment of their friends from importuning the grand jurors;

(3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at [t]he trial of those indicted by it;

(4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation

*See U.S. Indus, Inc. v. U.S. Dist. Court for the Southern Dist. of Cal., Central Division*, 345 F.2d 18, 21 (9th Cir. 1965).

None of those considerations apply here. Ms. Brown has already been charged; there is no further grand jury deliberation to be had. There is no threat of witness intimidation, particularly since the witnesses are law enforcement, not lay persons. Indeed, after a grand jury's investigation has terminated, most of the reasons for grand jury secrecy are no longer applicable and the others are less than compelling.

///

## IV. CONCLUSION

For these reasons, Ms. Brown requests the Court compel the government t to produce the grand jury testimony transcript(s) to the defense

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: September 26, 2025      By  /s/ Erica Choi
ERICA CHOI
Deputy Federal Public Defender