BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
LAUREN E. BORDER (Cal. Bar No. 327770)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8231
     Facsimile: (213) 894-0141
     E-mail:   lauren.border@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 2:25-cr-00701-FMO |
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date:  October 21, 2025 |
| ASHLEIGH BROWN, | Trial Time:  9:00 a.m. |
| | Location:    Courtroom of the Hon. Fernando M. |
| Defendant. | Olguin |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District

//

//

of California and Assistant United States Attorney Lauren E. Border, hereby files its Trial Memorandum.

Dated: October 3, 2025

Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

_____/s/_____
LAUREN E. BORDER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TRIAL MEMORANDUM**

**I.    FACTUAL SUMMARY**

Defendant will stand trial on October 21, 2025 for assault on Federal Protective Services ("FPS") Inspector Z.C., a federal officer, in violation of 18 U.S.C. § 111(a)(1). The charge is a Class A misdemeanor.

This is a simple assault case. In the evening of August 2, 2025, a crowd of approximately 50 demonstrators had gathered outside the Edward Roybal Federal Building to protest recent immigration actions in Los Angeles. (See Dkt. 40-1.) Z.C., along with about 10 other Federal Protective Service ("FPS") Inspectors, were on duty monitoring the crowd in vests marked "Homeland Security." (Id.; Dkt. 41 - Gov't Motion in Limine #1 Ex. B.)

One protestor, a male later identified as Jonathon Redondo-Rosales, ran in front of an unmarked federal law enforcement vehicle exiting federal property onto Alameda Street. (Id.; see also Dkt. 41 - Gov't Motion in Limine #1 Ex. C.) Redondo-Rosales then threw himself onto the hood of the vehicle, attempted to evade arrest, and struck V.C., an FPS Inspector. (Id.) Once FPS Inspectors were able to detain Redondo-Rosales, they began escorting him to a loading dock area. (See Dkt. 40-1 at USAO_019.)

While Z.C. was escorting Redondo-Rosales to the loading dock area, defendant approached Z.C. (Id. at USAO_020.) Multiple Inspectors, including Z.C., asked her to get back. (Id.) Defendant, however, ignored these instructions and proceeded towards Redondo-Rosales and near the group of Inspectors. (Id.) Defendant then swung her arm and struck Z.C.'s left arm and torso as she passed him. (Id.) Video footage shows Z.C. turning and pointing to defendant

after she strikes him.[1] (See Dkt. 41 - Gov't Motion in Limine #1 Ex. B at 0:13.)



Another FPS Inspector, Inspector Eric Murberg, witnessed the assault and also pointed to defendant. (See Dkt. 40-1 at USAO_020.) FPS Inspectors Jaupre Williams and William Terpstra attempted to arrest defendant, but she resisted. (Id.) After a brief struggle, Inspectors Williams and Terpstra were able to detain her using handcuffs. (Id.)

## II.  INFORMATION

On August 5, 2025, defendant ASHLEIGH BROWN ("defendant") was arrested on a criminal complaint charging her with a felony violation

---

[1] Defendant is seen in a blue mask at approximately 0:09 in Dkt. 41 (Gov't Motion in Limine #1 Ex. B). Inspector Z.C. is seen pointing at approximately 0:13.

2

of 18 U.S.C. § 111(a)(1) (Assault of a Federal Officer). (Dkt. 1, 4.) On August 26, 2025, the government filed an information charging defendant with a Class A Misdemeanor violation of 18 U.S.C. § 111(a)(1). (Dkt. 26.)

**III.  DETENTION**

On August 5, 2025, defendant was ordered released on bond. (Dkt. 6.) On September 10, 2025, while on bond in this case, defendant was arrested on a criminal complaint charging her with violation of 18 U.S.C. §§ 371, 119: Conspiracy to Publicly Disclose the Personal Information of a Federal Agent. (See Case No. 2:25-cr-00780-SVW, dkts. 1, 9.) Defendant is detained in that matter. (Id. dkt. 9.) On September 23, 2025, a federal grand jury indicted defendant for violations of 8 U.S.C. § 371: Conspiracy to Publicly Disclose the Personal Information of a Federal Agent, and 18 U.S.C. § 119(a): Publicly Disclosing the Personal Information of a Federal Agent. (Id. dkt. 22.) An order to show cause for why bond should not be revoked in this case is scheduled on October 6, 2025 before the Honorable Magistrate Judge Rozella A. Oliver. (Dkt. 34.)

**IV.  DISCOVERY**

The government has produced discovery to defendant, including defendant's criminal history, videos of the time period surrounding the assault, victim and witness statements, recordings of witness interviews, incident reports, texts from FPS inspectors about defendant's case, FPS radio calls from August 2 and 3, 2025, documents regarding defendant's official duties, and documents and videos relating to defendant's felony indictment on September 23, 2025. The government has also made documents regarding use of force available for review at the United States Attorney's Office in Los

3

Angeles while the government's motion in limine regarding self-defense remains pending with the Court. In total, the government has produced discovery totaling 185 bates numbers.

**V.    STIPULATIONS WITH DEFENSE COUNSEL**

The parties have not yet entered any trial stipulations.

**VI.   STATEMENT OF THE CHARGE AND ELEMENTS**[2]

Defendant is charged with one count of assault on a federal officer in violation of 18 U.S.C. § 111(a)(1), a Class A Misdemeanor.

    **A.    Elements of the Offense**

The government must prove at trial: (1) defendant forcibly assaulted Z.C., and (2) defendant did so while Z.C. was engaged in, or on account of, his official duties. Ninth Cir. Model Jury Instructions 8.1 (2022 ed.).

    **B.    "Forcible Assault" Explained**

There is a forcible assault when one person intentionally strikes another, or willfully attempts to inflict injury on another, or intentionally threatens another coupled with an apparent ability to inflict injury on another which causes a reasonable apprehension of immediate bodily harm. Ninth Cir. Model Jury Instructions 8.1 (2022 ed.).

Section 111 is a general intent crime in the Ninth Circuit, and no intent to injure is required to prove this offense. United States v. Sanchez, 914 F.2d 1355, 1358 (9th Cir. 1990).

    **C.    "Official Duties" Explained**

A person is engaging in the performance of official duties if he is acting within the scope of his employment, that is, the officer's

---

[2] Defendant's position on the elements is set forth in the joint jury instructions. (Dkts. 38, 39.)

4

actions fall within his agency's overall mission, in contrast to engaging in a personal frolic of his own. Ninth Cir. Model Jury Instructions 8.1 (2022 ed.). The victim in this case was a Federal Protective Services Inspector deployed to Los Angeles to protect federal buildings during immigration-related protests.

### D.   Self-Defense Elements, If Applicable

It is a defense to the charge if (1) the defendant did not know that Z.C. was a federal officer, (2) the defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful force, and (3) the defendant used no more force than appeared reasonably necessary in the circumstances. See Ninth Cir. Model Jury Instructions 8.3 (2022 ed.). If defendant makes a prima facie showing of all three elements and is permitted to make a self-defense argument, which is the subject of a pending motion in limine and the disputed jury instructions, the government must additionally prove at trial: (1) defendant knew that Z.C. was a federal officer or employee, (2) defendant did not reasonably believe force was necessary to defend against an immediate use of unlawful force, or (3) defendant used more force than appeared reasonably necessary in the circumstances. (See id.) The government has moved to exclude any evidence or argument related to self-defense. (See Dkt. 40.)

### VII. LENGTH OF TRIAL AND NUMBER OF WITNESSES

In total, the government estimates that its case-in-chief (with a reasonable allotment for cross-examination) will be approximately one to two days. The government intends to call the following

5

witnesses[3] in its case-in chief, and defendant has provided the following estimates for cross-examination:

    (1) FPS Inspector Eric Murberg (cross 15 minutes)

    (2) FPS Inspector Z.C. (cross 15 minutes)

    (3) FPS Inspector William Terpstra (cross 15 minutes)

    (4) Homeland Security Investigations Special Agent Robert M. Kurtz III* (cross 30 minutes)

    (5) U.S. Immigration and Customs Enforcement Agent R.H.* (cross 120 minutes)

    (6) Baldwin Park Police Department Officer Janae Moreno* (cross 30 minutes)

    (7) Baldwin Park Police Department Officer Steven Arroyo* (cross 30 minutes)

    (8) Homeland Security Investigations Computer Forensics Analyst Sean McPherson* (cross 30 minutes)

    Witnesses denoted with an asterisk will be called if the Court grants the government's pending motion in limine to admit evidence pursuant to Fed. R. Evid. 404(b).[4]

**VIII.  RELEVANT LEGAL AND EVIDENTIARY ISSUES**

    **A.  Pending Motions**

    The government has filed three motions in limine to preclude or admit evidence and argument. (Dkts. 40, 42, 44.) Specifically, these motions seek to:

---

[3] The government reserves the right to call additional witnesses in either its case-in-chief or rebuttal case (if any).

[4] The defense's position is these witnesses should be excluded, as set forth in the Opposition to Government's Motion in Limine #2, and in no way concedes these witnesses should testify at trial. According to the defense, the cross estimates may change depending on the receipt of Henthorn materials, additional reports, and witness statements.

6

- Preclude self-defense (Motion in Limine No. 1);
- Admit evidence pursuant to Fed. R. Evid. 404(b) (Motion in Limine No. 2); and
- Exclude post-assault and general protest-related evidence (Motion in Limine No. 3).

Defendant filed two motions in limine seeking to permit attorney-led voir dire (dkt. 46), and compel grand jury testimony transcripts (dkt. 47). All motions remain pending before the Court and are scheduled to be heard at the Pretrial Conference on October 10, 2025.

### B. Photographs and Video Surveillance

The government intends to introduce photographs and video footage at trial. Defendant currently anticipates stipulating to the admissibility of many of these exhibits per the parties' joint exhibit stipulation. Admitting a photograph or video into evidence requires that the proponent meet only a very low hurdle. "Under the Federal Rules, the witness identifying the item in a photograph need only establish that the photograph is an accurate portrayal of the item in question." People of Territory of Guam v. Ojeda, 758 F.2d 403, 408 (9th Cir. 1985) (interpreting Fed. R. Evid. 901(b)(1)). The Ninth Circuit has held that "[p]hotographs are admissible as substantive as well as illustrative evidence." United States v. May, 622 F.2d 1000, 1007 (9th Cir. 1980).

Photographs and videos should be admitted so long as they fairly and accurately represent the event or object in question. See United States v. Oaxaca, 569 F.2d 518, 525 (9th Cir. 1978). Notably, "the witness who lays the authentication foundation need not be the photographer, nor need the witness know anything of the time,

7

conditions, or mechanisms of the taking of the picture." 32 McCormick on Evid. § 215 (7th ed.). Rule 901(a) simply requires that a proponent of evidence make a prima facie showing of authenticity so that a reasonable juror could find "that the item is what the proponent claims it is." Fed. R. Evid. 901(a).

### C. Lay Testimony

Federal Rule of Evidence 701 "permits a lay witness to give opinion testimony as long as the opinion is (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." United States v. Pino-Noriega, 189 F.3d 1089, 1097 (9th Cir. 1999) (quotation marks omitted). The government anticipates eliciting testimony from Inspector Z.C. regarding defendant's intent to strike him – as opposed to an accident or a mere brush – based on defendant's observable traits, including her demeanor, body movements, and the nature of the strike itself.

### D. Scope of Cross-Examination of Defendant

If the defendant testifies at trial, she waives her right against self-incrimination, and the government will cross-examine her on all matters reasonably related to the subject matter of her testimony. See, e.g., Fitzpatrick v. United States, 178 U.S. 304 (1971) ("The defendant cannot assert a self-incrimination privilege 'on matters reasonably related to the subject matter of his cross-examination.'"); United States v. Black, 767 F.2d 1334, 1341 ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver. Rather, the inquiry is whether 'the government's questions are reasonably related' to the subjects covered by the defendant's testimony.")

(internal quotations and citation omitted).

The scope of cross-examination is within the discretion of the trial court. Fed. R. Evid. 611(b). The defendant has no right to avoid cross-examination on matters that call into question her claim of innocence. United States v. Mehrmanesh, 682 F.2d 1303, 1310 (9th Cir. 1982); United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54 (9th Cir. 1981). The government, however, may introduce evidence should defendant "open the door." See United States v. Alexander, 48 F.3d 1477, 1488 (9th Cir. 1995), as amended on denial of reh'g (Apr. 11, 1995) ("When a defendant takes the stand and denies having committed the charged offense, he places his credibility directly at issue.").

**E.   Affirmative Defenses and Reciprocal Discovery**

Defendant has not given notice of her intent to rely on any defense of entrapment, mental incapacity, alibi, or any other affirmative defense outside of self-defense, despite the government's request for such notice of intent. Therefore, to the extent defendant may attempt to rely on such a defense, the government reserves the right to object and to move to preclude the defendant from asserting such a defense. The subject of self-defense is currently being litigated before this Court.

Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of defendants to produce three categories of materials that they intend to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure. Rule 16 imposes on defendants a continuing duty to disclose these categories of materials. Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and

(c). In those circumstances where a party fails to produce discovery as required by Rule 16, the rule empowers the district court to "prohibit that party from introducing the undisclosed evidence," or it may "enter any other order that is just under the circumstances." Fed. R. Crim. P. 16(d)(2)(C) and (D). To the extent defendant may attempt to introduce or use any evidence at trial that she has not produced to the government, such documents should be excluded. See Taylor v. Illinois, 484 U.S. 400, 415 (1988) (defendant's failure to comply with, or object to, government's discovery request before trial justified exclusion of unproduced evidence).

To date, defendant has produced in discovery 11 photos of alleged injuries from her arrest, and three protest-related videos from approximately one week before the charged incident.

### F.   Jury Nullification

The government also reserves the right to object to any evidence and/or argument relating to any possible jury nullification defense, including concerning punishment, the actions of law enforcement both after defendant's arrest and at other protest events, or national immigration policy and its effect on the community and/or individuals. A defendant has no right to present evidence relevant only to such a defense. United States v. Powell, 955 F.2d 1206, 1213 (9th Cir. 1992); Zal v. Steppe, 968 F.2d 924, 930 (9th Cir. 1992) (Trott, J., concurring) ("[N]either a defendant nor his attorney has a right to present to a jury evidence that is irrelevant to a legal defense to, or an element of, the crime charged.").

## IX.   CONCLUSION

The government respectfully requests leave to supplement this Trial Memorandum, as appropriate.