BILAL A. ESSAYLI
Acting United States Attorney
JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division
CLIFFORD D. MPARE (Cal. Bar No. 337818)
Major Crimes Section
Assistant United States Attorney
LAUREN E. BORDER (Cal. Bar No. 327770)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-4962 / 8231
     Facsimile: (213) 894-0141
     E-mail:  clifford.mpare@usdoj.gov
              lauren.border@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-00701-FMO |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENSE MOTION TO COMPEL PRODUCTION OF USE OF FORCE MATERIALS |
| v. | |
| ASHLEIGH BROWN, | Trial Date:  October 21, 2025<br>Time:        9:00 a.m.<br>Location:    Courtroom of the Hon. Fernando M. Olguin |
| Defendant. | |

Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Clifford D. Mpare and Lauren E. Border, hereby files its opposition to defendant ASHLEIGH BROWN's ("defendant") motion to compel production of use of force materials (dkt. 69, "Mot.").

This opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: October 15, 2025              Respectfully submitted,

BILAL A. ESSAYLI
Acting United States Attorney

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division


          /s/
LAUREN E. BORDER
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

In a last-ditch effort to complicate what is otherwise a straightforward, single-count simple assault case, defendant seeks to compel the production of records completely unrelated to her conduct or her interactions with victim Z.C.  What amounts to a mere curiosity by defendant regarding the Federal Protective Service's ("FPS") internal policies on use of force does not, under Rule 16 of the Federal Rules of Criminal Procedure, necessitate the production of these wholly irrelevant materials.  There is no good-faith argument that the records defendant moves to compel are relevant in this simple assault case.

What's more, defendant files her motion to compel <u>after</u> the government has already made the requested materials available for in-person review.[1]  Such an approach further muddies the waters on what purpose this request serves.  The records have no bearing on defendant's case, the discovery rules do not support the disclosure of such records, and if defendant identified any true evidentiary value, the records are readily available for inspection.  Defendant's motion to compel is meritless and should be denied.

**II.   ARGUMENT**

  **A.   Legal Standard**

"Materiality is a necessary prerequisite to discovery."  <u>United States v. U.S. Dist. Ct., Cent. Dist. of Cal., Los Angeles, Cal.</u>, 717 F.2d 478, 480 (9th Cir. 1983).  Evidence is "material" under Rule 16

---

[1] In proposing this avenue of review for defendant, the government maintained its position that the records did not fall under its discovery obligations but offered the option to defendant as a courtesy.

if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness preparation, ... or assisting impeachment or rebuttal." United States v. Graham, 83 F.3d 1466, 1474 (D.C. Cir. 1996)(cleaned up); see also United States v. Nikrasch, 25 F. App'x 570, 573 (9th Cir. 2001) (similar).  "Although the materiality standard is not a heavy burden, the Government need disclose Rule 16 material only if it enables the defendant significantly to alter the quantum of proof in his favor." Graham, 83 F.3d at 1474.

### B. The Requested Materials Are Immaterial and Do Not Significantly Alter the Quantum of Proof in Defendant's Favor

Defendant's motion does not, nor could it, articulate how the requested materials satisfy the materiality requirements of Rule 16. Internal documents regarding FPS's use of force policies are irrelevant to the elements the government must prove at trial and are not material to the defense.  There is no dispute as to what the government must prove at trial.  To establish defendant's guilt, the government must only prove beyond a reasonable doubt that (1) defendant forcibly assaulted FPS Inspector Z.C., and (2) the defendant did so while Z.C. was engaged in, or on account of, his official duties. See Ninth Circuit Model Jury Instruction No. 8.1. As described in the government's motion in limine to preclude self-defense arguments, and as seen in the video evidence submitted to the Court, while Z.C. was busy escorting another individual to the federal building defendant approached him. (See dkt. 40 at 2-3.) Defendant then struck Z.C. as he walked by her, and Z.C., after alerting his fellow inspectors of defendant's assault, continued to escort the other individual away.  Other FPS inspectors separate from

Z.C. then detained defendant. (See id.)  Even if, as expected, defendant asserts that these separate FPS inspectors used excessive force during her detention – which they did not – defendant's arrest occurred after she assaulted Z.C.  What's more, Z.C. played no role in the events leading to defendant's detention.  Thus, the documents requested by defendant regarding FPS use of force policies (1) have no bearing on the elements of her assault on Z.C., (2) are immaterial to this case, and (3) would not "significantly [ ] alter the quantum of proof in [defendant's] favor." Graham, 83 F.3d at 1474.

Ignoring the simplicity of this case and undisputable facts, defendant makes several arguments in support of her motion to compel production of FPS's internal documents regarding use of force.  Each of which is unavailing.

First, defendant argues that "the government should have produced these materials at the outset of this case because it is relevant to the defense's assessment of self-defense."  (Mot. 3.) This is not so.  The requested use of force materials have no bearing on whether Z.C. used excessive force and/or whether defendant acted in self-defense because there is no question that Z.C. simply walked by defendant before the alleged assault. Defendant has not proffered any evidence to the contrary – nor could she.  The government has not failed to produce, for example, additional video footage of Z.C. and defendant prior to the assault that could change the "quantum of proof" in support of defendant's self-defense argument at trial.  The internal agency documents defendant requests are not relevant to whether defendant could successfully argue self-defense.

Second, defendant claims the requested materials are "relevant to determining whether officers used excessive force" and that "an

3

excessive force determination is relevant to the elements of a section 111 charge, not only self-defense." (Mot. 4.) This is a re-hash of defendant's first argument and fails for the same reasons as above: an excessive force defense contemplates that a federal officer used force <u>prior</u> to a defendant's alleged assault. Such conditions do not apply here. This case is about whether defendant assaulted <u>Z.C.</u>, specifically – not any and all other inspectors who may have played a role in the arrest of defendant after her assault of Z.C. Z.C.'s only interactions with defendant were: (1) walking by her, (2) identifying her as the person who hit him, and (3) continuing on his way, while escorting another rowdy individual away from the protest. (<u>See</u> dkt. 40 at 3-4.) "[A]n individual who is the attacker cannot make out a claim of [excessive force] as a justification for an assault." <u>United States v. Acosta-Sierra</u>, 690 F.3d 1111, 1126 (9th Cir. 2012).

    Defendant's cited cases are unpersuasive. Indeed, they support the position that the government need not produce the requested materials. In <u>Cedano-Arellano</u>, the defendant was indicted on charges of smuggling cocaine into the United States after a narcotics detector dog "alerted" on his gas tank at the Mexican border. 332 F.3d 568, 570 (9th Cir. 2003). Defense counsel retained an expert to review the dog's performance and sought the dog's training records and training standards and manuals under Fed. R. Crim. P. 16 and the Jencks Act. (<u>Id.</u>) The Ninth Circuit found that the requested materials were "crucial to [defendant's] ability to assess the dog's reliability, a very important issue in his defense, and to conduct an effective cross-examination of the dog's handler" because the handler had testified about the dog's above-average performance. (<u>Id.</u> at

571.)  In defendant's other cited case, United States v. Muniz-Jaquez, 718 F.3d 1180 (9th Cir. 2013), the Ninth Circuit found that "certain U.S. Border Patrol dispatch tapes" should have been produced because they contained "potentially exculpatory evidence." (Id. at 1182.)  The facts of Cedano-Arellano and Muniz-Jaquez are a far cry from the instant proceedings.  In short, where defendant seeks an array of internal documents concerning use of force guidelines for an agency, broadly, and without any credible claim that Z.C. used any force on defendant, the holdings in both of defendant's cited cases have no bearing on the proper outcome here.

Third, and finally, defendant argues that "use of force materials are relevant to assessing Z.C.'s and other testifying officers' bias and credibility." (Mot. 5.)  Defendant's request for any use of force materials for mere impeachment purposes has no merit.  As noted above, the scope of testimony during the government's case-in-chief will focus on the elements it is required to prove, beyond a reasonable doubt, for defendant to be guilty of simple assault: (1) defendant intentionally hit Z.C., and (2) defendant did so while Z.C. was engaged in his official duties as an FPS inspector (i.e., protecting federal buildings during protests).  Nothing more is required.  Accordingly, the manner in which other FPS inspectors (not including Z.C.) responded to defendant after she committed her assault has no bearing on the inspectors' ability to truthfully recount the events related to defendant's conduct before they detained defendant.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to compel.

5